IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GEORGE EUGENE CROSS,

    Petitioner,                  No. CIV S-09-0488 LKK KJM P

    vs.

MICHAEL CORONA,                ORDER AND

    Respondent.              FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a county jail inmate proceeding pro se with a petition for a writ of habeas corpus challenging his Sacramento County convictions for a variety of pimping and forcible sexual offenses. Respondent has filed a motion to dismiss. Petitioner has filed a motion for an evidentiary hearing on the question of equitable tolling, a request for the appointment of counsel, a request to file an amended traverse, a request for an investigation of the Orange County Jail, where he is currently being held pending trial on other charges, and an amended petition for a writ of habeas corpus.

I. <u>Motion For The Appointment Of Counsel (Docket No. 35)</u>

        Petitioner has requested the appointment of counsel. There is no absolute right to appointment of counsel in habeas proceedings. <u>See</u> <u>Nevius v. Sumner</u>, 105 F.3d 453, 460 (9th Cir. 1996). However, 18 U.S.C. § 3006A authorizes the appointment of counsel at any stage of

1

1  the case "if the interests of justice so require." See Rule 8(c), Fed. R. Governing § 2254 Cases.
2  In the present case, the court does not find that the interests of justice would be served by the
3  appointment of counsel at the present time.

4  II.  Request For An Investigation (Docket No. 34)

5    Although it is difficult to discern exactly what petitioner seeks in this filing, he
6  alleges he was denied access to an ink pen, even though he needs one to fill out a form MC-275
7  "to answer the Ninth Circuit Court"; that he is unable to pay for transcripts; and that he needs
8  funds to pay for mailings, apparently concerning problems at the Orange County Jail. He asks
9  the court to investigate why he is "receiving such unconstitutional treatment of which forced me
10 out of being pro-per" in the Orange County case, particularly because the Orange County
11 Superior Court refused to conduct a "Marsden"[1] hearing concerning his investigator.

12   As he has done before, petitioner asks this court to intervene in his state court
13 proceedings. The court declines to do so. Younger v. Harris, 401 U.S. 37, 43, 54 (1971). In
14 addition, petitioner's complaints about his access to a pen have nothing to do with this case: there
15 is currently nothing due and this court will accept filings written in pencil.

16 III. Motion To File An Amended Traverse (Docket No. 36)

17   Once again, it is difficult to discern the gravamen of petitioner's request: in the
18 amended traverse included with this request, petitioner takes issue with respondent's alleged
19 "introduction of false evidence," apparently concerning petitioner's claim of actual innocence.
20 To the extent the court can understand this document, it will treat it as a reply to respondent's
21 opposition to the motion for an evidentiary hearing.
22 /////
23 /////
24

---

[1] In California, a hearing on a defendant's request for the appointment of new counsel is undertaken according to People v. Marsden, 2 Cal.3d 118 (1970).

IV. <u>The Motion To Dismiss And Request For An Evidentiary Hearing (Docket Nos. 16 & 27)</u>

    A. <u>Background</u>

On December 5, 2003, petitioner was sentenced to an indeterminate term of fifty-five years to life and a determinate term of twenty-two years, eight months in Sacramento County Superior Court. Lodged Document (Lodg. Doc.) 1.

The Court of Appeal rejected his claims of error in a decision filed August 26, 2005, and the California Supreme Court denied review on November 16, 2005. Lodg. Docs. 2 & 4.

On December 28, 2005, petitioner filed a petition for a writ of habeas corpus in Sacramento County Superior Court; that court denied the petition on January 18, 2006. Lodg. Docs. 5 & 6.

On February 3, 2006, petitioner submitted a document the Superior Court construed as a motion for reconsideration.[2] The court denied the motion on February 22, 2006. The court observed that to the extent petitioner sought to add new claims, he would have to secure leave to file a supplemental petition, which the court declined to grant. To the extent the motion was one for reconsideration of the earlier denial, the court denied it because petitioner had not presented "specific reasons why the court should reconsider its initial denial." Lodg. Doc. 7.

On February 21, 2006, petitioner filed a document he called "habeas corpus 2d Amendment." The Superior Court rejected this on March 1, 2006, reminding petitioner that it had previously informed him it would not accept any amendments to the writ petition, especially after the denial of the motion for reconsideration. Lodg. Doc. 8.

/////

---

[2] Petitioner's Legal Mail log suggests the motion for reconsideration was mailed on January 31, 2006. Docket No. 1-2 at 2. In making references to the docket, the court relies on the document numbers assigned to the petition by the court's ECF system.

1    On February 28, 2006, the Superior Court denied the motion to compel documents that petitioner had filed on January 13, 2006, observing it had no jurisdiction to consider the request because the habeas petition had been denied.  Lodg. Doc. 11.

On March 2, 2006, petitioner attempted to amend his Superior Court habeas petition, an attempt the court rebuffed on March 13, 2006.  The court informed petitioner that "the method of review of the denial of this petition is by filing a new petition with the Third District Court of Appeal."  Lodg. Doc. 9.

On April 20, 2006, the Superior Court sent a letter to petitioner informing him that his writ had been denied on January 18, 2006, and the motion for reconsideration had been denied on February 23, 2006.  Lodg. Doc. 10.

On April 27, 2006, the Court of Appeal received a letter from petitioner, notifying the court that he mailed a petition for a writ of habeas corpus on April 24, 2006.  Lodg. Doc. 12.  The writ itself was filed in the Court of Appeal on May 12, 2006.  Lodg. Doc. 13.  This writ was denied on September 21, 2006.  Lodg. Doc. 14.  On October 31, 2006, the Court of Appeal returned a motion for reconsideration to petitioner, noting that the case was final.  Lodg. Doc. 16.

On January 5, 2007, petitioner filed a petition for a writ of habeas corpus in the California Supreme Court.  Lodg. Doc. 17.  That court denied the petition on June 20, 2007.  Lodg. Doc. 18.

On October 21, 2008, petitioner filed a petition for a writ of habeas corpus in the Ninth Circuit.  Cross v. Corona, Docket No. 08-74398 (9th Cir.).  On January 12, 2009, that court transferred the writ to the Central District.  The Central District transferred the case to this court on February 12, 2009.

/////
/////
/////
/////

B. <u>The Statute Of Limitations</u>

The Antiterrorism and Effective Death Penalty Act (AEDPA) contains a statute of limitations for filing a habeas petition:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244.

A conviction is final for purposes of the Antiterrorism and Effective Death Penalty Act (AEDPA) statute of limitations at the expiration of the ninety day period for seeking certiorari. <u>Bowen v. Roe</u>, 188 F.3d 1157, 1159 (9th Cir. 1999). In this case, that ninety day period ended on February 15, 2006. Accordingly, the statute of limitations began to run on February 16, 2006, and would have expired on February 16, 2007, absent any tolling. <u>Thorson v. Palmer</u>, 479 F.3d 643, 645 (9th Cir. 2007) (applying Fed. R. Civ. P. 6(a) to AEDPA statute of

/////

/////

1  limitations). The petition filed on October 21, 2008 in the Ninth Circuit is not timely absent any
2  tolling, because it was filed 614 days after the statute of limitations expired.[3]

3          The statute of limitations is tolled during the pendency of any "properly filed"
4  state collateral attack on the judgment. Nino v. Galaza, 183 F.3d 1003, 1006-07 (9th Cir. 1999).
5  In Artuz v. Bennett, 531 U.S. 4 (2000), the Supreme Court noted that a petition is properly filed
6  "when it is delivered to, and accepted by, the appropriate court officer for placement into the
7  official record." Id. at 8. The court determined that such a petition is "properly filed" for
8  § 2244(d)(2) purposes

> when its delivery and acceptance are in compliance with the
> applicable laws and rules governing filings. These usually
> prescribe, for example, the form of the document, the time limits
> upon its delivery, the court and office in which it must be lodged,
> and the requisite filing fee.

Id. (footnote omitted).

        Respondent argues that petitioner's Superior Court petition has no tolling effect because it was filed before the statute of limitations began to run. MTD at 4. He relies on Waldrip v. Hall, 548 F.3d 729, 735 (9th Cir. 2008), which observed that a state petition denied before the statute of limitations had begun to run "had no effect on the timeliness of the ultimate federal filing." However, in Tillema v. Long, 253 F.3d 494, 502 (9th Cir. 2001), the Ninth Circuit found a state petition filed before the statute of limitations had begun to run but decided

---

[3] Citing no authority, respondent argues the petition filed in the Ninth Circuit was not properly filed because it was filed in the wrong court. Motion to Dismiss (MTD) at 3 n.4. However, under Federal Rule of Appellate Procedure 22(a), a habeas petition filed in the Court of Appeal "must be transferred to the appropriate district court." And under 18 U.S.C. § 1631, when a case is filed in a court without jurisdiction and the court decides to transfer the action, it "shall proceed as if it had been filed in . . the court to which it is transferred on the date upon which it was actually filed in . . . the court from which it is transferred." See also Lopez v. Heinauer, 332 F.3d 507, 511 (8th Cir. 2003); Phillips v. Seiter, 173 F.3d 609, 610 (7th Cir.1999).

    Petitioner certified that the petition was put into the prison mail system on December 31, 2007. Under the prison mailbox rule of Houston v. Lack, 487 U.S. 266, 276 (1988), a document is filed when it is given to prison authorities for mailing. See also Patterson v. Stewart, 251 F.3d 1243, 1245 n.2 (9th Cir. 2001). However, as discussed in the body of this recommendation, the presumption does not apply in this case.

1 after the limitations period began had the effect of tolling time. See also Jiminez v. Rice, 276
2 F.3d 478, 482 (9th Cir. 2001) ("a state habeas petition filed *before* the AEDPA statute of
3 limitations begins to run tolls the limitations period"); Sorce v. Artuz, 73 F.Supp.2d 292
4 (E.D.N.Y. 1999) (state petition pending at time limitations period began to run delayed start until
5 state issued decision).
6   In this case, the limitations period began to run on February 16, 2006. If this court
7 deems the proceedings on the Superior Court petition final as of the denial on January 18, 2006,
8 then this petition has no effect on the tolling period. If, however, the habeas petition was not
9 final until the denial of the motion for reconsideration and the rejection of the amended petitions,
10 then the calculations change.
11   Respondent argues that petitioner's motion for reconsideration of the Superior
12 Court petition had no tolling effect because California does not allow for petitions for
13 reconsideration in habeas proceedings, which are final, in his view, immediately upon filing.
14   As support for his claim, respondent cites Ex parte Washer, 200 Cal. 598 (1927),
15 Ex parte Robinson, 71 Cal. 608 (1887), Application of Travers, 48 Cal.App. 764 (1920) and Ex
16 parte Shoemaker, 25 Cal.App. 551 (1914), all of which involve the finality of habeas proceedings
17 in the Courts of Appeal and Supreme Court. The Shoemaker court observed it would not
18 entertain a motion for rehearing because the judgment was final when it issued under the rules as
19 they existed at that time.
20   However, in this case, the Superior Court did not treat petitioner's motion for
21 reconsideration as improperly filed but instead denied it substantively, because it was not
22 properly supported. This court will accept the Superior Court's interpretation of its own
23 jurisdiction and the propriety of the filings. See also People v. Tulare County Superior Court,
24 129 Cal.App.4th 324, 280 (2005) (order granting habeas is final order subject to appeal under
25 Cal. Pen. Code § 1506); see also In re Roberts, 36 Cal.4th 575 (2005) (in reviewing procedural
26 history of case, noting a motion for reconsideration of a habeas denial pursued in the superior

court). Accordingly, because the ruling on the motion for reconsideration was issued on February 22, 2006, after the statute of limitations had begun to run, petitioner is entitled to tolling during the pendency of that writ.

He is not, however, entitled to tolling for the time he spent filing amended petitions. The Superior Court rejected petitioner's attempts to amend as improperly filed because he had not secured leave of the court. Accordingly, the amendments filed on February 21 and March 2, 2006 were not properly filed. See Board of Prison Terms v. Superior Court, 130 Cal.App.4th 1212, 1237 (2005).

In addition, petitioner is not entitled to statutory tolling for his motion to compel. Under § 2244(d)(2), statutory tolling is available for any properly filed application for relief "with respect to the pertinent judgment or claim." A motion to compel does not challenge the conviction but rather seeks material to develop such a challenge and so does not toll the statute of limitations. Ramirez v. Yates, 571 F.3d 993, 100 (9th Cir. 2009).

In Carey v. Saffold, 536 U.S. 214, 218-21 (2002), the Supreme Court held that the AEDPA statute of limitations is tolled not only between the actual filing and decision on a writ, but also during those periods between filings as a petitioner works his or her way "up the ladder" through higher courts to complete "one full round" of state court review of claims, so long as there was not undue delay between the denial of one petition and the filing of another. Id. at 217, 219-20; Welch v. Newland, 267 F.3d 1013, 1016 (9th Cir. 2001) ("tolled period includes intervals between the disposition of a state court petition and the filing of a subsequent petition at the next state appellate level"). However, in Evans v. Chavis, 546 U.S. 189, 198 (2006), the United States Supreme Court directed lower federal courts to determine whether a "gap" petition was delayed unreasonably, even when a state court did not deny the petition as untimely. The Court suggested that a gap longer than the thirty to sixty days permitted in states with written rules for filing might be reasonable, while six months would not be. Id. at 201.

/////

1         Respondent argues that because the first writ was not properly filed, petitioner is
2 not entitled to gap tolling between its denial and the filing of the next petition in the Court of
3 Appeal. However, the first writ and the motion for reconsideration were properly filed, so if the
4 gap was reasonable under Evans, petitioner is entitled to tolling. In this case, the gap between the
5 denial of the motion for reconsideration and the mailing of the petition to the Court of Appeal
6 was sixty-two days, which this court finds to be within the Evans reasonableness formulation.
7 Compare Culver v. Director of Corrections, 450 F.Supp.2d 1135 (C.D. Cal. 2006) (71 day gap
8 not reasonable). Petitioner is entitled to tolling for the gap and, as respondent concedes, for the
9 time the petition was pending in the Court of Appeal. However, because that court rejected his
10 motion for reconsideration as improperly filed, the tolling does not extend to the time that motion
11 was pending unless he is otherwise entitled to tolling for the gap between the denial and his filing
12 of the Supreme Court petition. See Cal. Rules of Ct. Rule 29.4 (2003) (denial of a petition
13 within the court's original jurisdiction final upon filing); Ex parte Shoemaker, 25 Cal.App. at
14 570-71. Accordingly, petitioner is entitled to tolling from February 16, 2006 until the day his
15 petition was denied by the appellate court on September 21, 2006, or a total of 218 days.
16         Petitioner's Supreme Court petition was filed on January 5, 2007, 106 days after
17 the denial of the petition in the Court of Appeal. This gap is too long to be reasonable under
18 Evans. Chaffer v. Prosper, 592 F.3d 1046, 1048 (9th Cir. 2010) (115 day gap not reasonable).
19 He is entitled to tolling, however, for the time the petition was pending until June 20, 2007, an
20 additional 167 days.
21         Even with the total statutory tolling of 385 days, the petition filed October 21,
22 2008, is 229 days too late.
23         As noted above, the petition filed in the Ninth Circuit contains petitioner's
24 certification that he put it in the prison mail system on December 30, 2007. There is no such
25 mailing reflected on petitioner's CDCR legal mail log, but it appears petitioner had been
26 transported to Orange County by then. However, among the many pages of documents submitted

in support of the petition is petitioner's declaration, in which he avers that he "mailed my petition to my prior attorney who waited 3½ months knowing time was critical . . . then it was delivered to an address that wasn't this courts." Docket No. 1-2 at 17; see also Motion For Evidentiary Hearing, Docket No. 27 at 2. Petitioner has also provided a post office receipt, showing that something was mailed to San Francisco on February 13, 2008, along with an investigator's report and declarations from two people who opined that the receipt probably reflected documents mailed by their office on petitioner's behalf. Docket No. 1-3 at 75-79. Because petitioner relied on counsel to mail the petition, he cannot claim the benefits of the prison mailbox rule. Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th Cir. 2003).

    C.  Equitable Tolling

Petitioner argues that even if statutory tolling does not render the petition timely, he is entitled to equitable tolling. As respondent notes, it is difficult to discern the exact bases of his claims because he has included them in his motion for evidentiary hearing, two documents dated August 10, 2009 entitled "traverse (although they are on original petition forms) and a document entitled "amended traverse."[4]

/////
/////
/////
/////
/////
/////

---

[4] As respondent notes, these documents are assemblages of unrelated documents, often unpaginated and in no logical order. Although the two "traverses" that petitioner sent to counsel rather than the court were scanned and filed by respondent, they were not stamped with page numbers by the court's ECF system. The court will identify the documents by name and by the order in which they were identified by the ECF system. Accordingly, Docket No. 22, Traverse # 1 is the document whose second page is entitled "Motion for DNA testing." Docket No. 22, Traverse # 2 is the document whose second page is a notice the State Bar had received a complaint against a lawyer.

To receive equitable tolling, petitioner must demonstrate "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). The Ninth Circuit has explained:

> To apply the doctrine in "extraordinary circumstances" necessarily suggests the doctrine's rarity, and the requirement that extraordinary circumstances "stood in his way" suggests that an external force must cause the untimeliness, rather than, as we have said, merely "oversight, miscalculation or negligence on [the petitioner's] part, all of which would preclude the application of equitable tolling.

Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011 (9th Cir. 2009) (internal citation omitted). It is petitioner's burden to show he is entitled to equitable tolling. Espinoza-Matthews v. People of the State of California, 432 F.3d 1021, 1026 (9th Cir. 2005).

1. Access To Legal Materials

So far as the court can discern, petitioner claims he is entitled to equitable tolling from March 7, 2007, when he was transferred from state prison to Orange County Jail, until November 6, 2007, when he received his legal materials from Mule Creek State Prison. Docket No. 22, Traverse # 2 (minutes from Orange County, showing transportation order & minutes showing court ordered boxes of legal materials provided to him).

The Ninth Circuit has recognized that equitable tolling may be justified when, through no fault of his own, a habeas petitioner was separated from his legal files and transcripts. Thus, in Lott v. Mueller, 304 F.3d 918 (9th Cir. 2002), the court recognized that if petitioner was able to bear his burden of showing he was deprived of his legal material for a period of eighty-two days when he was away from the prison, he might be entitled to equitable tolling.

In this case, petitioner's Supreme Court petition was pending until June 20, 2007 and so provides him with statutory tolling. As respondent concedes, he is entitled to the period beginning the next day, June 21, 2007, and running until the day he received his materials on November 6, 2007, a period of 139 days.

/////

### 2. Notice Of Supreme Court's Denial

Petitioner next argues he did not receive notice that the California Supreme Court denied his petition until December 14, 2007, although it is not entirely clear whether he claims that the court's mailing was defective or that the Orange County Jail did not give him his legal mail. Docket No. 1 at 34; Docket No. 27 at 2. Equitable tolling may be available if a petitioner demonstrates he did not receive a court's decision in a timely fashion. Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir. 2009) (remanding for determination when petitioner received notice); Lewis v. Mitchell, 173 F.Supp.2d 1057, 1062 (C.D. 2001) (inmate presented evidence that Supreme Court decision sent to wrong address). In this case, however, the Supreme Court's docket lists petitioner's address as the Orange County Jail, and petitioner has presented nothing suggesting the court's decision was sent to an improper address.

Petitioner also claims that Orange County jail personnel were interfering with his legal mail. He provides only a docket from his Orange County case noting that on September 11, 2007, "defendant brings up issues with the United States mail privledges [sic]." Docket No. 22, Traverse #2 (minutes). This provides little support for his claim that the denial was withheld by jail personnel. But even if petitioner did not receive the Supreme Court's decision until December 14, 2007, this court has found the statute of limitations to be tolled equitably for most of that time because petitioner lacked access to his legal materials. Even assuming petitioner did not receive notice until December 14, 2007, he is entitled only to an additional thirty-eight days of tolling, from November 7 until December 14, 2007.

### 3. Interference By Orange County Officials[5]

Petitioner argues he did not receive sufficient supplies for mailing and for preparing pleadings, that his access to a pen has been restricted, that jail officials destroyed some

---

[5] Respondent argues that petitioner's voluminous filings in other courts belie his claim that he was denied the wherewithal to prepare his habeas petition. Counsel relies on a number of documents, however, which were apparently never lodged with this court. See Docket No. 33 at 12.

of his legal books, and that he was not granted pro per status until December 18, 2007, and even then not given access to his legal materials until January 3, 2008. Docket No. 27 at 2.

The court does not credit petitioner's claim that he was not given access to his legal materials until January 2008, because the petition ultimately filed in this case is dated December 30, 2007. This date also belies petitioner's claim that he lacked access to paper, for the petition with its numerous exhibits is 183 pages long.

Moreover, the fact that petitioner's access to a pen was restricted is not an extraordinary circumstance justifying equitable tolling: this court has always accepted materials written in pencil.

Petitioner argues that some of his law books were destroyed on October 6, 2008, but makes no attempt to articulate how this impeded his ability to file his habeas petition, which was, in the main, drafted by December 30, 2007.

Finally, petitioner supports his claim that he was denied postage for mailing the petition by providing a transcript of an Orange County hearing on November 24, 2008, during which the Superior Court judge declined to grant him pro per privileges in his federal case. This is, of course, after the petition was filed in the instant case. In addition, during that hearing, petitioner argued that a different judge had approved such funds. Docket No. 22, Traverse 2 (Transcript of November 24, 2008 Hearing, and random page regarding lost books). A docket from the Orange County Superior Court shows that an order directing the Sheriff to pay for all of petitioner's legal mail was filed October 6, 2008. Docket No. 22, Traverse 22 (Orange County Docket). However, petitioner has failed to make any showing, apart from his conclusory declaration that he was indigent, that he was unable to mail the petition without financial assistance from the jail. He is not entitled to tolling.

4. Attorney Interference

As noted above, petitioner alleges he gave the petition to his appointed counsel on time, that counsel failed to mail the petition until February 2008, and that it was mailed to the

wrong place. Although petitioner has provided a tracking number, he has provided no information showing where the petition was ultimately delivered in February 2008.

Attorney miscalculation or negligence "is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel." Lawrence v. Florida, 549 U.S. 327, 336-37 (2007); Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001) ("miscalculation of the limitations period . . . and negligence in general do not constitute extraordinary circumstances sufficient to warrant equitable tolling"). Only "egregious conduct" by an attorney may be grounds for equitable tolling. Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003).

Petitioner alleges that his lawyer "intentionally lost" the habeas petition, but provides nothing but his own conclusory allegations in support of this claim. The record before this court supports a finding of attorney negligence only. This does not provide a basis for equitable tolling.

   5. Actual Innocence

In Schlup v. Delo, 513 U.S. 298, 314-15 (1995), the Supreme Court held that a habeas petitioner who makes "a colorable showing of actual innocence" that would implicate a "fundamental miscarriage of justice" may be entitled to have "otherwise barred constitutional claim[s]" considered on the merits. The Ninth Circuit has suggested that a sufficient Schlup showing might overcome the bar of the statute of limitations. Majoy v. Roe, 296 F.3d 770, 775-76 (9th Cir. 2002). Ultimately, it is petitioner's burden to demonstrate actual innocence. Jaramillo v. Stewart, 340 F.3d 877, 883 (9th Cir. 2003).

The Supreme Court has recognized that this exception to the statute of limitations is concerned with actual, as opposed to legal, innocence and must be based on reliable evidence not presented at trial. Schlup, 513 U.S. at 324; Calderon v. Thompson, 523 U.S. 538, 559 (1998).

/////

Once petitioner has presented such evidence, a court must consider the new evidence in light of the evidence as a whole, and must determine whether in light of all the evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. Doe v. Menefee, 391 F.3d 147, 166 (2d Cir. 2004).

In this case petitioner has not met the first hurdle, for he has not presented reliable evidence of actual innocence. As the Supreme Court explained:

> To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

Schlup, 513 U.S. at 323.

To the extent the court understands petitioner's claim, he argues he is actually innocent of one of the rapes because the semen recovered from a condom was destroyed before it could be tested and that a DNA test would have proved his innocence. See Lodg. Doc. 2 at 10-13. The destruction of the sample, of course, means that petitioner cannot present any testing to prove his innocence, and he has presented nothing else but his own rehashing of the evidence to suggest that testing would in fact exonerate him. This is insufficient to satisfy Schlup.

To the extent petitioner is claiming he is innocent of the other charges, his argument hinges on his claims that the other witnesses lied, which flow from his analysis of the record and from a variety of police reports. This rehash of the record also does not satisfy the Schlup standard. Burks v. Dubois, 55 F.3d 712, 718 (1st Cir. 1995).

In sum, petitioner is entitled to 177 days of equitable tolling and 385 days of statutory tolling for a total of 562 days of tolling. Even so, the petition filed October 21, 2008, is 52 days too late.

/////

/////

IT IS THEREFORE ORDERED:

1. Petitioner's motion to file an amended traverse (docket no. 36) is granted;

2. Petitioner's motion for the appointment of counsel (docket no. 35) is denied; and

3. Petitioner's motion for an evidentiary hearing (docket no. 27) is denied.

IT IS HEREBY RECOMMENDED that:

1. Petitioner's request for an investigation (docket no. 34) be denied; and

2. Respondent's motion to dismiss (docket no. 16) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 1, 2010.

_____
U.S. MAGISTRATE JUDGE

2/cros0488.mtd.